**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**DORIS M. MAY,**

           **Plaintiff,**

    v.                5:13-CV-170
                        (FJS/ATB)

**RUBY TUESDAY, INC.,**

          **Defendant.**

---

**APPEARANCES**         **OF COUNSEL**

**OFFICE OF JAMES K. EBY**     **JAMES K. EBY, ESQ.**
150 West Third Street
Oswego, New York 13126
Attorneys for Plaintiff

**WARD GREENBERG HELLER**    **TONY R. SEARS, ESQ.**
**& REIDY LLP**
300 State Street
Rochester, New York 14614
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are Defendant's motions to preclude the testimony and opinions of Plaintiff's expert, Daniel J. Manning, and for summary judgment dismissing the complaint in its entirety. *See* Dkt. No. 17. The Court heard oral argument in support of, and in opposition to, these motions on July 23, 2014, and reserved decision. The following constitutes the Court's written disposition of the pending motions.

## II. BACKGROUND

Plaintiff originally filed her complaint on January 14, 2013, in New York States Supreme Court, Oswego County. *See* Dkt. No. 1, Notice of Removal at ¶ 1. Defendant removed the action from state court on the basis that this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). *See id.* at ¶ 8.

In her complaint, Plaintiff alleges that she was injured when she tripped on a concrete wheel stop (curb stop) in the parking lot of a restaurant that Defendant owns and operates in Oswego, New York. On November 4, 2011, Plaintiff and her sister were patrons at Defendant's restaurant. Directly in front of the main entrance/exit doors of the restaurant is located a handicapped parking spot, the western most boundary of which abuts the sidewalk in front of the entrance/exit doors and which is marked by a metal sign and a concrete curb stop. *See* Dkt. No. 1, Complaint at ¶ 5. When Plaintiff and her sister exited the restaurant, Plaintiff tripped over the concrete curb stop causing her to fall and sustain serious personal injury. *See id.* at ¶ 6. Plaintiff contends that her injuries were solely the result of Defendant's negligence. *See id.* at ¶ 7. Finally, Plaintiff asserts that Defendant's negligence

> consists of having located a handicapped parking place in direct alignment with the center of the entrance/exit doors thereby creating an obstruction to unencumbered travel by the placement of the concrete curb and metal sign and failing to properly mark the obstruction and failing to properly design and place railings or other visible barriers and otherwise negligently constructing and maintaining the scene.

*See id.* at ¶ 8.

After the parties had completed discovery, Defendant filed the pending motions, which the Court will address in turn.

### III. DISCUSSION

**A.     Admissibility of the testimony and opinions of Plaintiff's expert, Daniel J. Manning**

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed the district courts that they must act as "'a gatekeeper to exclude invalid and unreliable expert testimony.'" *DeVito v. Smithkline Beecham Corp.*, No. Civ. A. 02-CV-0745, 2004 WL 3691343, *2 (N.D.N.Y. Nov. 29, 2004) (quoting *Bonton v. City of New York*, No. 03 Civ. 2833, 2004 WL 2453603, at *2 (S.D.N.Y. Nov. 3, 2004)). This gatekeeping function applies "whether the proposed expert testimony is based upon scientific knowledge, 'technical,' or some other 'specialized' knowledge." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171 (1999) (citing Fed. R. Evid. 702)). In addition, the court must keep in mind that, "under Rule 403, even relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury.'" *Id.* (quoting Fed. R. Evid. 403). As the Supreme Court explained in *Daubert*, "'[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses.'" *Daubert*, 509 U.S. at 595 (quotation omitted). Finally, "'[t]he proponent of expert evidence must establish admissibility under Rule 104(a) of the Federal Rules of Evidence by a preponderance of the proof.'" *DeVito*, 2004 WL 3691343, at *2 (quoting *Bonton*, 2004 WL 2453603, at *2 (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987))). The burden is the same "whether the issue is the 'qualification[s] of a person to be a witness, . . ., or the admissibility of the evidence' itself." *Id.* (quoting Fed. R. Evid. 104(a)).

In determining the admissibility of expert evidence, the court engages in a two-part inquiry. *See id.* First, in accordance with Rule 702 of the Federal Rules of Evidence, "'[t]he court should admit specialized expert testimony if the witness is "qualified as an expert by knowledge, skill, experience, training or education" and his testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue."'" *Id.* (quoting *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (quoting Fed. R. Evid. 702)) (other citation omitted).

In assessing the qualifications of an expert, the court should do so with liberality and flexibility and should not require the proposed expert "'to satisfy an overly narrow test of his own qualifications.'" *DeVito*, 2004 WL 3691343, at \*3 (quoting *Kass*, 2004 WL 2475606, at \*4 (quoting *Lappe v. American Honda Motor Co., Inc.*, 857 F. Supp. 222, 227 (N.D.N.Y. 1994) *aff'd* 101 F.3d 682 (2d Cir. 1996))). "'So long as the expert stays within the "reasonable confines of his subject area," the expert can fairly be considered to possess the "specialized knowledge" required by Rule 702.'" *Id.* (quotation omitted).

Second, "the court must insure that '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to facts of the case.'" *Id.* (quoting Fed. R. Evid. 702). "In other words, whether an expert witness' 'opinion is ultimately admissible depend [sic] on the reliability and relevance of the proffered testimony.'" *Id.* (quoting *Kass*, 2004 WL 2475606, at \*5).

In *Daubert*, the Supreme Court set forth four factors that courts should consider in determining the reliability of an expert's reasoning or methodology:

> "(1) whether the theory or technique relied on has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community."

*DeVito*, 2004 WL 3691343, at *3 (quotation omitted).

These factors are not an all-inclusive checklist; instead, courts should apply them "'flexibly, depending on the particular circumstances of the particular case at issue.'" *Id.* (quotation omitted). Thus, "'when evaluating the admissibility of non-scientific expert testimony, the standard under Rule 702 is a liberal and flexible one, and the factors outlined in *Daubert* are merely guidelines in aiding a court's reliability determination.'" *Id.* (quotation omitted).

Finally, "the Supreme Court has . . . stated that reliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between [the] methodology and the expert's conclusions." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). "'[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'" *Id.* (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)). Thus, "'[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* (quotation omitted). Therefore, the Second Circuit has stated that, "'when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.'" *Id.* at 396-97 (quoting *Amorgianos*, 303 F.3d at 266).

In this case, Defendant challenges both the qualifications of Plaintiff's proposed expert as

well as the reliability of his opinions. Although Mr. Manning is an architect, *see* Dkt. No. 17-3, Transcript of Deposition of Daniel Manning ("Manning Tr.") at 53-54, the record indicates that he has little or no experience with parking lot design, *see id.* at 56. However, he has designed commercial buildings and has worked with civil engineers to design parking lots for such commercial establishments. *See id.* Mindful that a court should apply a liberal and flexible rule and not require an expert to satisfy an overly narrow test of his qualifications when assessing such qualifications, the Court finds that Mr. Manning is qualified to testify as an expert in this case.

This conclusion, however, does not end the Court's inquiry. The Court must still determine whether Mr. Manning's conclusions related to the design of the entrance to the restaurant are reliable; and, in this case, the Court finds that they are not. Neither in his deposition testimony nor in his affidavit does Mr. Manning provide any basis for his conclusion that "good architectural practice and preventive design would have aligned the centerline of the access aisle to the center line of the exit/entrance doors to the restaurant." *See* Manning Aff. at ¶ 21. Mr. Manning does not indicate what the source of this "good architectural practice and preventive design" is. Nor does he state what methodology he used to come to this conclusion. Finally, Mr. Manning acknowledges that Defendant's building and parking lot are in compliance with all applicable codes and regulations. *See* Manning Tr. at 68, 70-71.

For the above-cited reasons, the Court finds that there is too great an analytical gap between the data on which Mr. Manning relies and the opinion he proposes. Thus, the Court concludes that his proposed expert testimony is unreliable. Accordingly, the Court grants

Defendant's motion to preclude Mr. Manning's testimony and opinion.[1]

**B.      Defendant's motion for summary judgment**

*1. Preliminary matters*

Local Rule 7.1(a)(3) provides that

> [t]he opposing party shall file a response to the Statement of
> Material Facts.  The non-movant's response shall mirror the
> movant's Statement of Material Facts by admitting and/or denying
> each of the movant's assertions in matching numbered paragraphs.
> Each denial shall set forth a specific citation to the record where
> the factual issue arises.  The non-movant's response may also set
> forth any additional material facts that the non-movant contends
> are in dispute in separately numbered paragraphs.  <u>The Court shall
> deem admitted any properly supported facts set forth in the
> Statement of Material Facts that the opposing party does not
> specifically controvert.</u>

Local Rule 7.1(a)(3).

In response to Defendant's Statement of Material Facts, *see* Dkt. No. 17-2, Plaintiff filed her own Statement of Material Facts, *see* Dkt. No. 19, which does not comply with Local Rule 7.1(a)(3). By way of example, Defendant's fourth statement provides that, "[a]t all relevant

---

[1] *See, e.g., Trojahn v. O'Neill*, 5 A.D.3d 472, 473 (2d Dep't 2004) (reversing the lower court's denial of the defendant's motion for summary judgment based on its finding that the plaintiff's expert affidavit raised an issue of fact as to whether the parking lot design contributed to the accident; the Second Department found that the "conclusion of the plaintiff's expert that the parking lot was defectively designed, without setting forth any violations of industry wide standards or accepted practices in the field of parking lot design and construction, was insignificant" (citation omitted)); *Estate of Richard Myers v. Wal-Mart Stores, Inc.*, No. 5:09-CV-549-FL, 2011 WL 1366459, *3 (E.D.N.C. Apr. 11, 2011) (stating that, "[a]lthough an expert witness may of course testify based on professional and specialized experience, that witness must 'explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts'" (quoting *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee notes))).

times, the Restaurant parking lot, including but not limited to its design, layout, and construction, has been in conformance and compliance with all applicable building codes, regulations, and other legal requirements, in all respects. (Ex. D 43:24-44:8, 45:9-45:21, 47:19-51:15, 59:9-62:16.)." *See* Defendant's Statement of Material Facts at ¶ 4. Plaintiff's fourth statement neither admits nor denies Defendant's fourth statement but, instead, provides that "[t]he Restaurant parking lot was in compliance with Oswego City Zoning Codes and Regulations and was otherwise ANSI compliant and compliant with American with Disabilities Act requirements. (Ex. D 47:19-51:15, 59:9-62:16.)." *See* Plaintiff's Statement of Material Facts at ¶ 4.[2] In light of Plaintiff's failure to comply with Local Rule 7.1(a)(3), the Court deems admitted the statements that Defendant sets forth in its Statement of Material Facts because Defendant has properly supported each of those statements, and Plaintiff has not specifically controverted any of them.

### *2. Standard of review*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[2] Plaintiff's first, second, third, fifth, sixth, seventh, eighth, and ninth statements are exactly the same as Defendant's first, second, third, fifth, sixth, seventh, eighth, and ninth statements. Plaintiff did not respond to Defendant's tenth statement. Plaintiff's tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, and nineteenth statements are the same as Defendant's eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth and twentieth statements. Plaintiff's twentieth statement is slightly different than Defendant's twenty-first statement. Plaintiff's twenty-first statement is slightly different than Defendant's twenty-second statement. Finally, Plaintiff's twenty-second, twenty-third, twenty-fourth, and twenty-fifth statements are the same as Defendant's twenty-third, twenty-fourth, twenty-fifth, and twenty-sixth statements. *See* Dkt. No. 17-2, Defendant's Statement of Material Facts; Dkt. No. 19, Plaintiff's Statement of Material Facts.

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's role is to determine "whether there is the need for a trial whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In making this determination, the court must view the evidence in the record and draw all reasonable inferences in the light most favorable to the non-moving party. *See Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871, 2010 WL 2735701, *3 (N.D.N.Y. July 9, 2010) (citation omitted).

Summary judgment is appropriate if the party that bears the burden of proof at trial fails to establish an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. Thus, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).

### 3. Merits

When a district court's jurisdiction is based on diversity, it applies the substantive law of the state in which the court sits. *See Fin. One Pub. Co. Lmtd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 333 (2d Cir. 2005). Thus, in this case, the Court will apply the substantive law of New York.

"To establish a prima facie case of negligence under New York law, 'a plaintiff must

demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quotation and other citation omitted). "It is beyond dispute that landowners and business proprietors have a duty to maintain their properties in reasonably safe condition[.]" *Di Ponzio v. Riordan*, 89 N.Y.2d 578, 582 (1997) (citations omitted). Furthermore, "[t]he existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the court[.]" *Id.* at 583 (citation omitted). "'The existence of a duty is an essential element of a negligence claim because, "[i]n the absence of a duty, as a matter of law, no liability can ensue."'" *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 547 (S.D.N.Y. 2012) (quoting *Farash*, 574 F. Supp. 2d at 367 (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997))). "The determination of whether a party breached its duty of care may also be decided as a matter of law." *Id.* (citations omitted).

With regard to landowners, although "a landowner has a duty to maintain its premises in a reasonably safe manner for its patrons . . . there is no duty to protect or warn against an open and obvious condition which is not inherently dangerous . . . ." *Stern v. River Manor Care Ctr., Inc.*, 106 A.D.3d 990, 991 (2d Dep't 2013) (internal citations omitted). "Generally, '[a] wheel stop or concrete parking lot divider which is clearly visible presents no unreasonable risk of harm' . . ." *Id.* (internal quotation and other citations omitted). In *Stern*, the plaintiff tripped over a wheel stop, and the defendants moved for summary judgment. *See id.* To support their motion, the defendants submitted "the plaintiff's deposition transcript and photographs of the wheel stop over which the plaintiff tripped." *Id.* The court held that these submissions "were sufficient to establish, prima facie, that the wheel stop was open and obvious, and was not inherently

dangerous . . . ." *Id.* (internal citations omitted). Furthermore, because the plaintiff had not raised a triable issue of fact, the court concluded that the trial court had properly granted summary judgment to the defendants. *See id.*

Likewise, in another case very similar to this one, the plaintiff sought to recover damages because she was allegedly injured when she tripped and fell over a concrete wheel stop in the defendant's parking lot. *See Cardia v. Willchester Holdings, LLC*, 35 A.D.3d 336 (2d Dep't 2006). The trial court denied the defendant's motion for summary judgment. On appeal, however, the Second Department reversed the trial court's order and granted the defendant's motion for summary judgment. *See id.* The Second Department explained that "[a] wheel stop or concrete parking lot divider which is clearly visible presents no unreasonable risk of harm." *Id.* (citations omitted). The court also found that the defendant had "made a prima facie showing of entitlement to judgment as a matter of law by presenting photographs depicting the condition of the parking lot at the time of the plaintiff's accident, which demonstrate that the wheel stop over which the plaintiff tripped and fell was not an inherently dangerous condition, and was readily observable by those employing the reasonable use of their senses . . . ." *Id.* at 336-37 (internal citations omitted). Finally, the court found that "[t]he affidavit of the plaintiff's expert was insufficient to raise an issue of fact because he offered only a generalized, conclusory opinion that the wheel stops in the parking lot violated good and accepted engineering safety practices . . . ." *Id.* at 337 (internal citations omitted).[3]

---

[3] Several other New York courts have reached the same result. *See Wachspress v. Cent. Parking Sys. of N.Y., Inc.*, 111 A.D.3d 499 (1st Dep't 2013); *Gallub v. Popei's Clam Bar, Ltd. of Deer Park*, 98 A.D.3d 559 (2d Dep't 2012); *Giambruno v. Wilbur F. Breslin Dev. Corp.*, 56 A.D.3d 520 (2d Dep't 2008); *Albano v. Pete Milano's Discount Wines & Liquors*, 43 A.D.3d 966

(continued...)

In this case, Defendant has submitted photographs that establish that the wheel stop, as it existed on the day that Plaintiff tripped over it, was open and obvious and not inherently dangerous. *See* Defendant's Statement of Material Facts at ¶¶ 16, 22. In addition, at her deposition, when she was asked if she saw the wheel stop at issue on her way into the restaurant, Plaintiff stated, "I'm sure I did." *See* Ex. A at 29:18-20. Furthermore, Plaintiff's sister, Ms. Dunsmoor, testified that, when she and Plaintiff left the restaurant, she saw the curb stop and walked past it. *See id.* at ¶ 23; Ex. B at 13:1-13:22. Defendant also submitted evidence establishing that, on the day of the accident, there were no obstacles, barriers, or anything else that prevented Plaintiff from walking on any one of the designated pedestrian walkways, including the designated walkways on each side of the handicapped parking space closest to the restaurant's entrance. *See* Ex. A 45:15-45:24; Ex. C; Ex. E. Finally, it appears from Plaintiff's testimony that, if she did not see the wheel stop when she exited the building, it was because she was following her sister and they were probably talking and she **did not look down at the ground at any time**. *See* Ex. A 28:10-28:24, 30:3-31:3; Defendant's Statement of Material Facts at ¶¶ 19-22.

Based on this record, the Court finds that Plaintiff has not come forward with any evidence to show that Defendant had a duty to protect or warn her about the wheel stop at issue. Rather, the undisputed record demonstrates that the wheel stop was open and obvious and was not inherently dangerous. Thus, the Court concludes that Plaintiff has failed to produce any evidence to support her claim of negligence.

---

[3](...continued)
(2d Dep't 2007); *Zimkind v. Costco Wholesale Corp.*, 12 A.D.3d 593 (2d Dep't 2004); *Bryant v. Superior Computer Outlet, Inc.*, 5 A.D.3d 343 (2d Dep't 2004).

## IV. CONCLUSION

Accordingly, for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to preclude the testimony and opinions of Plaintiff's expert is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: October 2, 2014
       Syracuse, New York

                                          Frederick J. Scullin, Jr.
                                          Senior United States District Court Judge